IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES LOUIS PROFFITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:15-CV-493 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff James Louis Proffitt ("Proffitt") filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"), seeking a closed period of disability benefits from January 1, 2012 through March 31, 2013. 42 U.S.C. §§ 401–433, 1381–1383f. Proffitt challenges the ALJ's determination that he was engaged in substantial gainful employment during the first six months of 2012, and therefore, did not have a continuous period of disability lasting for at least 12 months. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Proffitt's Motion for Summary Judgment (Dkt. No. 17), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 22.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Proffitt failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Proffitt protectively filed for DIB and SSI on December 29, 2011, alleging a disability onset date of November 6, 2009, but requesting a closed period of disability from January 1, 2012 through March 31, 2013. R. 169–186. The Commissioner denied the applications at the initial and reconsideration levels of administrative review. R. 45–62, 65–86. On February 3, 2014, ALJ Thomas W. Erwin held a hearing to consider Proffitt's disability claim. R. 22–44. Proffitt was represented by an attorney at the hearing, which included testimony from Proffitt. Id.

On March 14, 2014, the ALJ entered a decision analyzing Proffitt's claim under the familiar five-step process,[2] denying Proffitt's claim for disability. R. 17–21. At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity ("SGA"), which is generally determined by the amount of money the claimant earned during the relevant

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

period. Here, Profitt sought a closed period of disability from January 1, 2012 through March 31, 2013, when his earnings increased above the SGA level. R. 19. The ALJ found that Proffitt had engaged in SGA from January 1, 2012 through June 30, 2012, and thus, had not been disabled for a continuous twelve-month period. R. 19-21. The ALJ stopped his analysis at Step One after determining that Proffitt was working during the relevant period, which precluded a finding of disability. Proffitt appealed the ALJ's decision and the Appeals Council denied his request for review on July 16, 2015 (R. 1–5), and this appeal followed.

## ANALYSIS

Proffitt contests the ALJ's determination that he engaged in SGA from January 1, 2012 through June 30, 2012, which is six months out of the relevant fifteen month period. R. 19.

Under the social security regulations, earnings derived from work activity are generally the primary consideration in determining whether a claimant engaged in SGA. See 20 C.F.R. § 404.1574(a)(1). If a claimant's earnings exceed guidelines set forth in the regulations, a presumption arises that the claimant engaged in SGA. See 20 C.F.R. § 404.1574(b)(2); Payne v. Sullivan, 946 F.2d 1081, 1083 (4th Cir.1991); Sprouse v. Astrue, No. 5:10CV00113, 2011 WL 2441263, at *2 (W.D. Va. June 13, 2011). Work may be substantial "even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a). However, the presumption of substantial gainful activity "may be rebutted" and "is not to be rigidly applied." Payne, 946 F.2d at 1083; Sprouse, 2011 WL 2441263, at *2. For 2012, a presumption arose that a claimant who earns $1,010.00 or more per month was engaged in SGA.[3]

Proffitt's earning records from 2012 reflect total earnings of $11,074.61. R. 194, 195, 200. As Proffitt contends, this number is below the threshold for SGA. Pl. Br. Summ. J. p. 3.

---

[3] See "Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity," available at: https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited on Nov. 29, 2016).

3

Proffitt's quarterly wage records show that he earned $3,119.00 in the first quarter of 2012, $3,287.00 in the second quarter of 2012, $1,634.00 in the third quarter of 2012, and $2,316.00 in the fourth quarter of 2012. R. 190–95. The ALJ averaged the earnings for the first six months, finding that Proffitt had monthly wages of $1,067.00 from January 2012 through June 2012, which is above the presumptive monthly SGA level of $1,010.00/month for 2012. R. 20.

Proffitt first argues that the "general rule of averaging should be applied [instead of the rule applied by the ALJ] because the level of variation is exactly what the averaging rule is intended to address. No month's earnings in 2012 represent periods of unrepresented work." Pl. Br. Summ. J. p. 5. Proffitt then points to SSR 83-35 which states the rule that "[e]arnings are generally averaged over the actual period of time in which work was performed." <u>Titles II & Xvi: Averaging of Earnings in Determining Whether Work Is Substantial Gainful Activity</u>, SSR 83-35 (S.S.A. 1983). If such a rule is followed and Proffitt's total income of $11,074.61 in 2012 is averaged over a 12 month period, the average monthly rate does fall below the SGA level of $1,010.00/month for 2012.[4]

Averaging the entire relevant period is not the proper method under 20 C.F.R. § 404.1574a(c) where a claimant has a significant change in work pattern or earnings during the relevant period. The governing regulation, 20 C.F.R. § 404.1574a states:

> (c) If there is a significant change in your work pattern or earnings during the period of work requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity.

20 C.F.R. § 404.1574a(c). The ALJ properly determined that this regulation was dispositive in calculating Proffitt's monthly wages for SGA purposes, stating:

---

[4] <u>See</u> "Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity," available at: https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited on Nov. 29, 2016); $11,074.61 divided by 12 months comes out to a monthly rate of approximately $922.88/month.

4

> In the instant case, the claimant's earnings record reflects that his earnings in the first and second quarters of 2012 decreased by approximately half in the third quarter of 2012 (Exhibit 4D). Given this significant decrease in earnings from the second quarter of 2012 to the third quarter of 2012, 20 C.F.R. 404.1574a(c)/416.974a(c) directs that the earnings prior to the end of the second quarter of 2012 and the earnings thereafter be averaged separately.

R. 20. Proffitt, however, maintains that the fluctuations in his earnings were not significant. He argues his "work pattern never changed. He worked as a stage hand from 1984 through the alleged period of disability…[t]he variation in his 2012 earnings occurred because he was physically unable to perform some of the work otherwise available to him…[u]nrepresentative periods of work involve separate and distinct work efforts." Pl. Br. Summ. J. p. 4–5. Proffitt also states his employer and coworkers "accommodated his impairments and inability to work at times because of his pain. (R. 30–32)." Pl. Br. Summ. J. p. 3.

Substantial evidence supports the ALJ's finding that significant changes occurred in Proffitt's earnings over the course of the relevant period. R. 20, 190–192, 194–195, 184, 200. From the second quarter of 2012 to the third quarter of 2012, Proffitt's earnings decreased roughly 50%, from $3,287 in the second quarter to $1,634 in the third quarter. From the third quarter of 2012 to the fourth quarter of 2012, Proffitt's earnings increased roughly 41%, from $1,634 to $2,316. There was only a change of 5% from his 2012 first quarter earnings of $3,119 to his second quarter earnings of $3,287, but a 38% change in earnings between the first and second halves of 2012. Proffitt's earning show large fluctuations over the course of 2012, especially when comparing earnings in the first half and second half of the year. At his hearing, Proffitt discussed how his work schedule varied depending on the type of shows he was working and how quickly he got "cut" and was able to leave. R. 30–3. Proffitt also explained that towards the end of 2012, he began turning down more work. R. 33.

5

There is little case law establishing what constitutes a "significant change" under the applicable regulations. Courts outside of this district have found fluctuations of $75-$300 in earnings between quarters to be insignificant when the claimant's work patterns were consistent. Shepard v. Astrue, No. 5:10-CV-323, 2011 WL 5419852, at *5 (D. Vt. Oct. 12, 2011), report and recommendation adopted, No. 5:10-CV-323, 2011 WL 5443064 (D. Vt. Nov. 9, 2011); see also Kwiatkowski v. Astrue, No. 10 C 6322, 2012 WL 1378653, at *4 (N.D. Ill. Apr. 20, 2012). Here, Proffitt experienced large fluctuations in earnings over the course of 2012, with differences as large as $1,653 or 50%, between the second and third quarters, and it appears his work patterns did change as the year progressed. An average of Proffitt's wages over the year would be an improper way to calculate whether his work as a stage hand met the threshold level for SGA.

Further, the ALJ did not base his decision solely on Proffitt's earnings in 2012. In Sprouse v. Astrue, the court found remand necessary when the ALJ did not consider the nature of the plaintiff's work, how well the plaintiff performed or whether the plaintiff's worked under special conditions such as to rebut the presumption of SGA, but based his decision solely on the plaintiff's earnings. 2011 WL 2441263, at *2–4. In this case, the ALJ also considered Proffitt's testimony as to his special accommodations, stating they "reportedly include working for one to five hours before resting and coming back later. He is also allegedly allowed to get up and move around after an hour of operating a forklift, take breaks as needed, and rely on others to lift heavy items." R. 20–21. The ALJ then stated:

> Even if these contentions are accurate, 20 CFR 404.1573(c)/416.973(c) provides that work done under special conditions may still show that a claimant has the necessary skills and ability to work at the substantial gainful activity level. The undersigned notes that there has been no objective corroboration of record from the claimant's employer(s) or elsewhere demonstrating that the claimant did not have the necessary skills and ability to work during the alleged closed period. Indeed, he indisputably receives SGA earnings in

6

Case 7:15-cv-00493-MFU-RSB   Document 28   Filed 01/24/17   Page 6 of 7   Pageid#: 457

his current employment situation, which has not been shown to differ significantly from his employment circumstances during the closed period at issue.

R. 21. Since the ALJ did consider whether Proffitt worked under special conditions for the relevant period and substantial evidence supports his decision to calculate Proffitt's earnings pursuant to 20 C.F.R. § 404.1574a(c), the ALJ's decision will not be disturbed.

## CONCLUSION

For the reasons set forth above, I recommend that Proffitt's motion for summary judgment be **DENIED**, and the Commissioner's motion for summary judgment be **GRANTED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: January 24, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge